## United States District Court, Northern District of Illinois

| * Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7782 | **DATE** | 11/20/2002 |
| **CASE TITLE** | Taylor vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Taylor's application for attorney's fees pursuant to the EAJA is granted in the amount of $6,642.50.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 2 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 28 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/20/2002 | |
| mm | courtroom deputy's initials | 02 NOV 21 PM 6:33 Date/time received in central Clerk's Office | date mailed notice mm mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES TAYLOR,                )
                               )
           Plaintiff,          )
                               )
   vs.                         )   Case No. 00 C 7782
                               )
JO ANNE B. BARNHART,           )
Commissioner of Social Security,)
                               )
           Defendant.          )

## MEMORANDUM OPINION AND ORDER[1]

NAN R. NOLAN, Magistrate Judge:

This matter is before the Court on plaintiff Charles Taylor's application for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §2412(d). On May 28, 2002, the Court reversed and remanded for further consideration Taylor's application for Supplemental Security Income benefits. Taylor claims that he is entitled to fees because the Commissioner's position in defending the decision of the Administrative Law Judge ("ALJ") was not "substantially justified." For the reasons set forth below, Taylor's application for attorney's fees is granted in the amount of $6,642.50.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c).

## BACKGROUND[2]

Taylor began receiving disability benefits on approximately November 1, 1992 based in substantial part on his drug and/or alcohol abuse. In 1996, Taylor's eligibility for benefits was redetermined because if drug and/or alcohol addiction remained a contributing factor material to the finding of disability, his benefits were to be terminated. In his 1996 application for benefits, Taylor claimed that he had become disabled due to hypertension and arthritis in his back. On December 6, 1996, the Social Security Administration ("SSA") advised Taylor that his benefits would end effective January 1, 1997 because there was "no medical evidence . . . to indicate that [his] conditions [were] severe enough to meet the requirements for disability."

On February 20, 1997, Taylor requested a hearing before an ALJ, claiming that he was disabled due to high blood pressure, arthritis, and seizures. The ALJ denied Taylor's claim for disability on September 10, 1998, finding that he could perform medium work with occasional limitations. The SSA Appeals Council denied Taylor's request for review, so Taylor sought review of the Commissioner's decision before this Court under 42 U.S.C. §405(g). Taylor argued that the ALJ wrongly rejected a report prepared by his treating physician, Dr. A.F. Pangan, and failed to consider evidence of disability in the record. The Court agreed and remanded the matter to the ALJ for further development of the record and an explanation of the reasoning behind the conclusion that Taylor could perform medium work.

On July 30, 2002, Taylor filed a timely application for fees in the amount of $5,005.50. *See Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). The Commissioner challenges Taylor's

---

[2] This order presumes familiarity with the Court's previous opinion, *Taylor v. Barnhart*, No. 00 C 7782, 2002 WL 1160113 (N.D. Ill. May 28, 2002).

entitlement to fees and, alternatively, the reasonableness of the requested amount. On October 1, 2002, Taylor amended his fee request to include time spent responding to the Commissioner's challenge, and now seeks $6,697.50.

## DISCUSSION

Under the EAJA, a court may award attorney's fees to a prevailing party in a civil suit against the government if the government's position was not "substantially justified." 28 U.S.C. §2412(d)(1)(A). It is undisputed that Taylor has prevailing party status. Def. Mem., p. 2; *Shalala*, 509 U.S. at 300. Thus, the only issue is whether the government's position was substantially justified; that is, whether it was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Seventh Circuit has held that "substantial justification" is demonstrated when the government's position is grounded in "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *United States v. Hallmark Construction Co.*, 200 F.3d 1076, 1078 (7th Cir. 2000) (citations and quotations omitted). In making a substantial justification determination, a court should consider both the government's litigation and pre-litigation conduct. *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996). Merely prevailing in a lawsuit against the government does not automatically entitle a party to fees under the EAJA. However, the government bears the burden of establishing that its position was substantially justified. *Id.*; *Hallmark*, 200 F.3d at 1079.

### A.   Taylor's Entitlement to Attorney's Fees

In this case, the Court found that the ALJ's decision to deny benefits to Taylor was not supported by substantial evidence because he did not adequately articulate the reasoning behind

3

his decision or fully develop the record before reaching that decision. The Court now concludes that the ALJ's decision was not reasonably based in fact or law, and that the Commissioner was not substantially justified in her position that the record contained adequate evidence to support the ALJ's findings.

As a preliminary matter, the Court rejects the Commissioner's argument that its position was substantially justified because the Court remanded the case for further proceedings as opposed to awarding benefits to Taylor outright. Def. Mem., p. 5. "[T]he outcome of a case is not conclusive evidence of the justification for the government's position." *Hallmark*, 200 F.3d at 1079. "It is more important for the district court to examine the actual merits of the Government's litigating position." *Id.* at 1080.

The record demonstrates that the ALJ's finding of no disability was based in large part on his decision to accept one of Dr. Pangan's reports ("Exhibit 8") but reject another ("Exhibit 11"). Exhibit 8 supported the ALJ's finding of no disability because it indicated that although Taylor had hypertension and degenerative arthritis in his knees, lower back and left elbow, he was still able to perform the activities of daily living and all work-related activities. In Exhibit 11, on the other hand, Dr. Pangan diagnosed Taylor with a seizure disorder in addition to his hypertension and arthritis, and indicated that he was taking Dilantin, an anti-seizure medication. Dr. Pangan also stated that Taylor could only lift or carry up to five pounds frequently and 20 pounds occasionally. The ALJ appears to have believed that Exhibit 11 was completed around the same time as Exhibit 8 and was, thus, inconsistent with Exhibit 8 and not worthy of credence. However, Exhibit 11 could have been written long after Exhibit 8. Even more troubling, the ALJ adopted, without explanation, certain functional limitations identified in Exhibit 11 after

rejecting it as generally unreliable due to some internal inconsistencies regarding Taylor's ability to sit. Faced with conflicting accounts from the same physician regarding Taylor's impairments and functional limitations, the ALJ should have sought clarification from the physician. *See Crosby v. Halter*, 152 F. Supp. 2d 955, 960 (N.D. Ill. 2001) ("[i]f the evidence is inadequate to determine whether the Plaintiff is disabled, the ALJ is required to seek additional information").

Furthermore, the ALJ did not adequately explain his reasons for accepting or rejecting additional evidence of Taylor's disability. For example, the ALJ rejected Taylor's report of seizures because he was never hospitalized for them or formally diagnosed with a seizure disorder. But the ALJ failed to explain why Taylor's treating physician would prescribe anti-seizure medication if he did not actually suffer from any seizures. The Commissioner notes that Dr. Pangan indicated that Taylor had "no seizures so far" and "no seizures recently" in April 1997 and February 1998, respectively. Def. Mem., p. 4. However, this in no way establishes that Taylor did not have a seizure disorder; indeed, this could simply demonstrate that the medication was working. At a minimum, the ALJ should have sought clarification from Dr. Pangan regarding why he prescribed anti-seizure medication if Taylor never presented with seizures. *Crosby*, 152 F. Supp. 2d at 961 ("the law [is] established that an ALJ may not make his own independent medical determinations about the claimant") (citing *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985)).

With respect to Taylor's reports of pain, the Court found that it was legal error for the ALJ to limit himself to "an observation that the severity of pain cannot be demonstrated by objective medical evidence." The Commissioner argues that the ALJ reasonably discounted Taylor's credibility on this issue because he had faked a bad profile during a psychological

5

evaluation. Def. Mem., p. 5. However, if the ALJ believed that Taylor's complaints of pain were not reasonably supported by medical evidence, he was required "to summon a medical expert . . . to provide an informed basis for determining whether the claimant is disabled." *Green v. Apfel*, 204 F.3d 780, 781-82 (7th Cir. 2000); *Crosby*, 152 F. Supp. 2d at 960 (court "will not reject the statements of the individual . . . solely because the available medical evidence does not substantiate [plaintiff's] statements"). Moreover, the ALJ failed to investigate Taylor's complaints of pain by determining how it affected his daily activities, or to "build a bridge" between those reported limitations and the ultimate conclusion that Taylor was not disabled. *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (internal quotations omitted) ("[w]e have repeatedly stated . . . that an ALJ must 'minimally articulate his reasons for crediting or rejecting evidence of disability'").

Finally, the ALJ did not explain his conclusion that Taylor could perform medium work, which involves frequent lifting of up to 25 pounds, when the only evidence on that issue was a report – Exhibit 11 – that Taylor could not lift over 20 pounds. And even assuming that the ALJ properly rejected Exhibit 11, he still failed to explain why Taylor could only perform medium work given that Exhibit 8 showed no work limitations at all.

In light of the ALJ's failure to consider all of the evidence in the record, to adequately articulate the reasoning behind the decision to deny benefits, and to fully develop the record before making a decision, the Court does not believe that the Commissioner met her burden of establishing that her position in supporting the ALJ's conclusion was substantially justified. *See Crosby*, 152 F. Supp. 2d at 961 ("[t]his is not a case in which the only problem was one of a failure to articulate. The Seventh Circuit noted substantial legal and factual errors"); *Corder v.*

*Massanari*, No. 00 C 2714, 2001 WL 1355986, at *2 (N.D. Ill. Nov. 1, 2001) ("if an ALJ's decision lacks an adequate factual basis . . . then the Commissioner's position in relying upon it cannot be substantially justified").

## B.    Amount of Fees and Costs

Having determined that Taylor is entitled to his attorney's fees, the Court next considers whether the amount requested is reasonable. Taylor seeks $6,697.50 in fees and expenses, representing 47.5 hours of work at $141 per hour. This amount includes a proper request for fees incurred in pursuing this fee request. *See Commissioner, INS v. Jean*, 496 U.S. 154, 162 (1990). The Commissioner does not object to the stated hourly rate. Rather, the Commissioner claims that the number of hours spent on this case is "nearly double the amount generally found reasonable by the courts" and is "particularly excessive, given that Mr. Taylor was represented by the same counsel" during both the administrative and federal court proceedings. Def. Mem., p. 7. However, the court rejected a similar argument in *Stringer v. Apfel*, No. 97 C 1223, 1998 WL 774138 (N.D. Ill. Oct. 29, 1998), where the attorney spent a total of 48.51 hours on the case despite having represented the plaintiff throughout the proceedings. *Id.* at *3. Here, Taylor's attorney worked a total of only 47.5 hours, which is "reasonable and consistent with this type of social security case." *See Rice v. Apfel*, 16 F. Supp. 2d 971, 975 (N.D. Ill. 1998) (62.84 hours of work reasonable).

The Commissioner also argues that the fees requested are excessive because they include time spent on clerical tasks not traditionally performed by an attorney, such as checking the status of the case, filing papers in court and serving papers on opposing counsel. Def. Mem., p. 7. The Court has reviewed the fee request and agrees that the 2.2 hours spent on filing and

serving court papers should not be billed at an attorney rate, but should be billed at a lesser clerk or paralegal rate of $25 per hour. *See Victor v. Apfel*, No. 97 C 386, 1997 WL 733930, at *3 (N.D. Ill. Nov. 18, 1997). Thus, after reducing the amount awarded by $55, Taylor is entitled to $6,642.50 in attorney's fees.

## CONCLUSION

For the reasons stated above, Taylor's application for attorney's fees pursuant to the EAJA is granted in the amount of $6,642.50.

Nan R. Nolan
NAN R. NOLAN
United States Magistrate Judge

Dated: November 19, 2002